Argued and submitted March 24, reversed and remanded for new trial
September 27, 2006

# STATE OF OREGON,
*Respondent,*

*v.*

# SARAH M. NORDLOH,
*Appellant.*

## 02CR0667; A121786

144 P3d 1013

Shawn Wiley, Deputy Public Defender, argued the cause for appellant. With him on the brief were Peter A. Ozanne, Executive Director, and Peter Gartlan, Chief Defender, Office of Public Defense Services.

Robert M. Atkinson, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Edmonds, Presiding Judge, and Brewer, Chief Judge,* and Barron, Judge pro tempore.**

BARRON, J. pro tempore.

---

\* Brewer, C. J., *vice* Deits, J. pro tempore.

\*\* Barron, J. pro tempore, *vice* Wollheim, J.

**BARRON, J. pro tempore**

Defendant appeals her conviction for possession of a controlled substance, arguing that the trial court erred by denying her motion to suppress evidence of contraband seized from her car pursuant to an inventory policy pertaining to impounded vehicles. *See former* ORS 475.992(4)(b) (2003), *renumbered as* ORS 475.840(3)(b) (2005). We reverse and remand the case for a new trial.

The facts are not disputed. A Grants Pass Department of Public Safety (DPS) traffic control officer stopped defendant's vehicle for making an unsignaled turn. After determining that defendant's driving privileges were suspended and that she did not have automobile insurance, the officer cited defendant and impounded her vehicle. The officer gave defendant an opportunity to remove her belongings from the vehicle and then proceeded to inventory the vehicle's contents pursuant to Grants Pass DPS policy, which provides that "all impounded vehicles shall be inventoried" and that "[a]ll luggage and other containers will be opened and inventoried."

During his inventory of the vehicle, the officer saw a small, zippered pouch in a hole in the driver's door. Because he believed it to be a coin purse, the officer unzipped the pouch and discovered paraphernalia typically used for smoking methamphetamine. Both field and laboratory testing confirmed the presence of methamphetamine.

Defendant was charged with possession of a controlled substance. *Former* ORS 475.992(4)(b) (2003), *renumbered as* ORS 475.840(3)(b) (2005). She moved to suppress the evidence seized during the inventory, arguing that the Grants Pass DPS inventory policy was invalid because it required the police to search all closed containers in an impounded vehicle without consent, a warrant, probable cause, exigent circumstances, and not incident to arrest. At the suppression hearing, the state conceded that an officer following the letter of the department's policy could conceivably violate constitutional protections against unreasonable searches and seizures but argued that the actions taken by the officer were reasonable and not unconstitutional because

he searched only a container designed to hold valuables. The trial court agreed with the state and denied defendant's motion. Defendant pleaded no contest but reserved her right to appeal the denial of the motion to suppress.

■     Because the inventory policy in this case suffers from the same defect that we recently found in *State v. Eldridge*, 207 Or App 337, 142 P3d 82 (2006)—that is, it requires searches of all containers in an impounded vehicle regardless of whether the container is normally associated with holding valuables—we write only to address the state's argument that, even if the policy is overbroad, the officer's conduct did not violate defendant's constitutional rights by the search of her coin purse.[1]

According to the state, the Grants Pass DPS policy allows lawfully impounded vehicles to be inventoried only pursuant to a properly authorized administrative policy that, as required by *State v. Atkinson*, 298 Or 1, 668 P2d 832 (1984), eliminates officer discretion when following the policy. Because defendant does not claim that the *Atkinson* requirements were not met and can cite no cases that hold that a policy is void because it authorizes the opening of too many containers, the state contends that we must look at the facts of each case to determine whether the actions of the officer involved were constitutional.

■     We are not persuaded that holding an inventory policy invalid under *Atkinson* is, as the state claims, analogous to holding a statute unconstitutional. It is generally true that a court will decline to find a statute unconstitutional where the defendant cannot show that it is unconstitutional as applied to the facts of the case. *See State v. Drummond*, 6 Or App 558, 562, 498 P2d 958 (1971). The reason for this general rule is that jurisdiction exists to decide only the legal rights of litigants in actual controversies, and facial constitutional challenges require courts to consider whether a statute might

---

[1] The wording of the policy in *Eldridge* required that all impounded vehicles "be completely searched and inventoried." *Eldridge*, 207 Or App at 342. The wording of the policy in this case requires that all luggage and other containers inside impounded vehicles be searched and inventoried. We do not believe the difference in wording is significant because the result is the same—containers not likely to contain valuables must be searched, in violation of *State v. Atkinson*, 298 Or 1, 10-11, 668 P2d 832 (1984).

also apply to other persons in other situations not before them. *See Drummond*, 6 Or App at 562-63 (citing *United States v. Raines*, 362 US 17, 21, 80 S Ct 519, 4 L Ed 2d 524 (1960)). The outcome of a void-for-vagueness challenge, for instance, is entirely dependent on whether the particular defendant was given fair warning that his conduct was prohibited. *See, e.g., State v. Albee*, 118 Or App 212, 216, 847 P2d 858, *rev den*, 316 Or 528, 854 P2d 940 (1993).[2] On the other hand, sometimes the relevant inquiry is not whether a particular litigant's rights have been violated but whether Congress had the authority to enact the statute in question. *See, e.g., United States v. Morrison*, 529 US 598, 120 S Ct 1740, 146 L Ed 2d 658 (2000) (striking down a portion of the Violence Against Women Act as beyond Congress's Commerce Clause powers to enact). In those cases, a litigant's conduct may fall squarely within the reach of a statute and yet the litigant may still attack its constitutionality.

■■ We think the present case is more analogous to a Commerce Clause challenge than to a void-for-vagueness challenge. The power to inventory a vehicle's contents exists only pursuant to a properly authorized policy. Whether the policy itself is properly authorized does not depend on the circumstances of the application of the policy to a particular defendant. It instead depends on the reasonable relationship between the conduct permitted under the policy and the government's interests in protecting property, eliminating false claims, and preventing injury. *See State v. Willhite*, 110 Or App 567, 572, 824 P2d 419 (1992). No such reasonable relationship exists in this case.

Were we to accept the state's argument in the context of inventories of impounded vehicles, *Atkinson*'s requirement that inventories be conducted pursuant to a properly authorized policy would be rendered meaningless. Policymakers could simply eliminate officer discretion by requiring plainly unconstitutional searches of every nook and cranny of a vehicle. *See Eldridge*, 207 Or App at 342-43 (holding invalid

---

[2] A court will consider whether a statute is vague or overbroad as it applies to others if the statute at issue purports to regulate or proscribe First Amendment rights, *see State v. Albee*, 118 Or App at 216 (citing *Dombrowski v. Pfister*, 380 US 479, 491-92, 85 S Ct 1116, 14 L Ed 2d 22 (1965)), but that does not affect our analysis here.

an inventory policy that required vehicles to be "completely searched and inventoried" because it "lack[ed] standardized criteria or procedures that properly prevent officer discretion and limit each inventory to a scope that is a constitutionally administrative action rather than a warrantless search"); *Willhite*, 110 Or App at 574 ("To approve a policy *because* it is so general that an officer must look everywhere he can think of flies in the face of the requirement that the inventory be conducted according to standardized criteria or established routine." (Internal quotation marks and citations omitted; emphasis in original.)). That would violate Article I, section 9, of the Oregon Constitution because the constitutional right to be protected from unreasonable search and seizure does not arise on the courthouse steps only after an illegal search has been conducted—the right exists to ensure that persons are secure in their property at all times. While "[i]t is not our function to decide as a matter of policy how, and for what purpose, automobiles or other private property that come into official custody should be examined," we are charged with assuring that the policies and procedures adopted to inventory vehicles do not violate constitutional guarantees. *Atkinson*, 298 Or at 6. Because the Grants Pass DPS inventory policy requires an officer to open all closed containers in an impounded vehicle, it is not reasonably related to protecting property or eliminating false claims, and thus the purported inventory in this case pursuant to the policy was in fact a warrantless and nonconsensual search that required suppression of the evidence.

Reversed and remanded for new trial.