Argued and submitted June 3, reversed and remanded December 9, 2009

# STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

# DAVID EARL STONE,
*Defendant-Respondent.*

Washington County Circuit Court
C071855CR; A138778

222 P3d 714

Tiffany Keast, Assistant Attorney General, argued the cause for appellant. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

No appearance for respondent.

Before Edmonds, Presiding Judge, and Wollheim, Judge, and Sercombe, Judge.

WOLLHEIM, J.

**WOLLHEIM, J.**

The state appeals the trial court's order suppressing evidence of methamphetamine that an officer found during an inventory of defendant's impounded car. ORS 138.060(1)(c). The state contends that the officer properly opened a closed container found in defendant's car as part of an inventory pursuant to the City of Beaverton's Vehicle Inventory Ordinance. We reverse.

The relevant facts are not in dispute. After defendant made an improper lane change, a City of Beaverton police officer stopped defendant's car. The officer determined that defendant's insurance had expired. The officer impounded the car and proceeded to inventory its contents. During the inventory, the officer discovered a black drawstring bag under the driver's seat. The officer believed that the bag could contain valuable personal property. He opened the bag and discovered four plastic bags containing a white crystalline substance that resembled methamphetamine. The officer then arrested defendant, who was subsequently charged with unlawful delivery and unlawful possession of a controlled substance, methamphetamine. ORS 475.890; ORS 475.894.

Defendant moved to suppress all of the evidence that the officer discovered during the inventory of the car. Defendant argued that the Beaverton inventory ordinance grants an officer discretion to open closed containers discovered during the inventory. Therefore, defendant argued, the inventory was a search that was *per se* unreasonable, no exception to the warrant requirement applied, and the evidence discovered during that search must be suppressed. The state countered that the inventory ordinance was valid because the officer had no discretion: The officer was required to open all closed containers that the officer reasonably believed contained valuable or dangerous property. The trial court agreed with defendant, explaining that the ordinance "gives the officer discretion to open the bag, but it doesn't say, 'Officer, you have to open the bag.' " Accordingly, the trial court granted the motion to suppress the evidence of methamphetamine.

■        The state appeals and renews the arguments that it made to the trial court.[1] We review a trial court's determination of whether a vehicle inventory is a valid exception to the warrant requirement for errors of law. *State v. Bernabo*, 224 Or App 379, 383, 197 P3d 610 (2008).

■        Article I, section 9, of the Oregon Constitution protects the right of the people against unreasonable searches.[2] Except for a few carefully defined exceptions, a warrantless search is *per se* unreasonable. *State v. Connally*, 339 Or 583, 587, 125 P3d 1254 (2005). The state, relying on the inventory exception to the requirement for a search warrant, argues that the Beaverton ordinance required the officer to open defendant's drawstring bag.

■        A vehicle inventory is a valid exception to the warrant requirement of Article I, section 9, if the inventory satisfies a three-part test. *State v. Atkinson*, 298 Or 1, 8-11, 688 P2d 832 (1984). First, the vehicle must be lawfully impounded. *Id.* at 8. Second, the inventory must be "conducted pursuant to a properly authorized administrative program, designed and systematically administered so that the inventory involves *no exercise of discretion* by the law enforcement person directing or taking the inventory." *Id.* at 10 (emphasis added). Third, the person performing the inventory must not deviate from the established protocol. *Id.* at 10-11.

■        Here, there is no dispute that the vehicle was lawfully impounded. *See* ORS 809.720 (authorizing officers to impound vehicles driven by uninsured drivers). We turn to the second part of the *Atkinson* test, which requires that the inventory be conducted pursuant to an administrative protocol that eliminates officer discretion.

■ ■        A valid inventory ordinance may have three purposes: "(1) protection of the person's property while it is in

---

[1] Defendant did not appear before this court.

[2] Article I, section 9, provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

police custody; (2) reduction or elimination of false claims against the police for lost property; and (3) protection against possible injury from impounded but uninventoried property." *State v. Guerrero*, 214 Or App 14, 18, 162 P3d 1048 (2007). But, in serving those three purposes, an inventory ordinance must not permit police to indiscriminately rummage through closed containers within a vehicle. *State v. Williams*, 227 Or App 453, 457, 206 P3d 269 (2009); *Guerrero*, 214 Or App at 18. Instead, officers must assume that the contents of a closed container are consistent with what the container is designed to carry. "[I]n the classic example, [officers] must inventory a closed fishing tackle box as 'one fishing tackle box.' " *Williams*, 227 Or App at 457 (citation omitted).

■     However, an inventory ordinance may require officers to open containers that are designed to contain valuables, such as briefcases, fanny packs, wallets, and purses. *State v. Johnson*, 153 Or App 535, 958 P2d 887, *rev den*, 327 Or 554 (1998) (briefcase); *State v. Bean*, 150 Or App 223, 946 P2d 292 (1997), *rev den*, 327 Or 448 (1998) (fanny pack); *State v. Mundt/Fincher*, 98 Or App 407, 780 P2d 234, *rev den*, 308 Or 660 (1989) (wallet and purse). Containers such as briefcases, coin purses, and fanny packs are "not 'closed, opaque containers' because they are typically used to store valuables in the same way as a purse or a wallet." *Johnson*, 153 Or App at 540.

■     An inventory ordinance must eliminate an officer's discretion with respect to closed containers in two ways. First, the ordinance must eliminate the officer's discretion whether or not to open closed containers. Second, if the officer is required to open any closed containers, the ordinance must eliminate discretion as to which of those closed containers to open. *Guerrero*, 214 Or App at 21. With those principles in mind, we turn to the Beaverton ordinance.

We begin with the text and context of the ordinance. *See Connally*, 339 Or at 588 (stating rule). The ordinance provides that "[a]n officer shall inspect the exterior and interior of every lawfully impounded vehicle as provided in this ordinance." It also provides that the purpose of vehicle inventories is to protect an owner's property while in the city's custody, protect the city against claims for lost, stolen, or

damaged property, and protect city employees from potential danger. The ordinance directs an officer how to inspect an impounded vehicle:

"The inspection of a lawfully impounded vehicle shall occur in the following manner:

"A.   An officer shall examine the exterior of the vehicle to determine if there is any readily apparent body damage.

"B.   An officer shall examine interior areas where personal property or dangerous items may reasonably be located. Interior areas shall include, but are not limited to:

"1.   The passenger compartment, including the center console, dashboard, glove box, door pockets, seat pockets, ash tray, sun visor and the areas behind and under the seats and floor mats;

"2.   An unlocked trunk;

"3.   An uncovered hatchback;

"4.   The open bed of a pickup truck; and

"5.   The area within any attached canopy, camper or car-top container openly accessible from either inside or outside of the vehicle.

"C.   An officer shall open and examine the following locked areas: glove box, trunk, center console, hatchback, canopy, camper, car-top container or similar area within or attached to a vehicle, if:

"1.   There is an openly accessible unlocking mechanism provided within the vehicle;

"2.   A key to the locked area will remain with the vehicle; or

"3.   A key to the locked area will be taken or withheld from the possession of an owner or occupant of the vehicle.

"D.   If the conditions set forth in subsection C of this section are not present, then the area shall remain locked and unopened.

"E.   The contents of a closed container found within a vehicle shall not be opened unless:

"1.   The officer reasonably believes that the closed container contains valuable or dangerous personal property;

"2.   An occupant of the vehicle wants to retain physical custody and control of the closed container; or

"3.   Opening the closed container is otherwise lawful.

"F.   Any objects found within an examined area or closed container that is opened for inspection pursuant to subsections B, C or E of this section, shall be scrutinized only to the extent necessary to complete an accurate inventory."

Section E provides that closed containers shall not be opened unless one of three conditions is met. Unlike section C, which requires officers to inspect the locked compartments of vehicles if certain conditions are met, the three exceptions in section E do not expressly require the officer to open a closed container. Rather, the three conditions are stated as exceptions to the general rule that closed containers must remain closed. The state contends that, read in context, section E of the ordinance requires officers to open closed containers if any of the conditions are satisfied. We agree.

The purpose of Beaverton's ordinance is to inventory valuable and dangerous personal property. In *Mundt/Fincher*, 98 Or App at 413, we considered an inventory policy that required officers to inventory all currency and checks. We held that the policy required officers to open purses and wallets because purses and wallets are designed to contain currency and checks. *Id.* at 412-13. Similarly to *Mundt/Fincher*, where officers were required to open closed containers to achieve the policy's ultimate objective, the officer here was required to open the drawstring bag if it was the type of closed container designed to contain valuable property. If a condition in section E of the Beaverton ordinance is satisfied, the officer cannot achieve the ordinance's purpose without opening the container. Thus, if an officer reasonably believes that a closed container holds valuable or dangerous personal property, the Beaverton ordinance requires the officer to open the container.

Finally, we consider the third prong of the *Atkinson* test, whether the officer followed the Beaverton ordinance.

298 Or at 10-11. Here, the officer opened the drawstring bag because he reasonably believed that it contained valuable or dangerous personal property. It was large enough to contain valuable personal property, and was tucked under the driver's seat, suggesting that the drawstring bag was hidden. Significantly, the officer did not open every closed container that he discovered during the inventory. Some of the closed containers, the officer testified, were either too small or in such poor condition that he did not reasonably believe that those containers held valuable or dangerous personal property. Consistently with the Beaverton ordinance, the officer did not open those containers.[3]

An inventory ordinance is valid if it eliminates an officer's discretion in conducting the inventory. By requiring an officer to open all closed containers that the officer reasonably believes hold dangerous or valuable personal property, the Beaverton ordinance eliminates officer discretion. Thus, the trial court erred in suppressing the evidence discovered during the inventory.

Reversed and remanded.

---

[3] At the motion hearing, defendant suggested that the officer should have squeezed the closed containers rather than open them. This case illustrates why defendant's suggestion is not mandated. The officer found numerous hypodermic needles during the inventory. Had the officer squeezed containers holding those needles, he could have been injured. For that reason, we do not impose such a requirement.